NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDWARD J. GARCIA, et al., | : | |
| Plaintiff, | : | Civil Action No. 08-1855 (JLL) |
| v. | : | |
| OSCAR AVILEZ, et al., | : | **O P I N I O N** |
| Defendants. | : | |

**JOSE L. LINARES, District Judge**

This matter comes before the Court upon submission of a civil complaint by Edward J. Garcia ("Garcia"), an inmate currently confined at Hudson County Correctional Center ("Facility") in Kearny, New Jersey.

The instant matter is one of four legal matters received by the Clerk from Garcia during April 2008. Specifically, the Clerk received the following Garcia's submissions:

1. On April 2, 2008, the Clerk received a civil complaint, executed pursuant to 42 U.S.C. § 1983; that matter is now pending before Judge Martini. See Civil Action No. 08-1648 (WJM), Docket Entry No. 1.

2. On April 9, 2008, the Clerk received Garcia's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254; that matter is now pending before Judge Wigenton. See Civil Action No. 08-1761 (SDW), Docket Entry No. 1;

3.    On April 15, 2008, the Clerk received the civil complaint, executed pursuant to 42 U.S.C. § 1983, in the instant matter now pending before the undersigned.  See, Docket Entry No. 1;

4.    Finally, on April 23, 2009, the Clerk received one more civil complaint, executed pursuant to 42 U.S.C. § 1983; that matter is now pending before Judge Cavanaugh.  See Civil Action No. 08-1990 (DMC), Docket Entry No. 1.

The gist of Garcia's four above-listed actions could be summarized as follows: (1) in the action pending before Judge Martini, Garcia challenges his arrest and judicial handling of the ensuing criminal prosecution currently pending before two judges at the Municipal Court of the City of Union City, Hudson County, New Jersey; (2) in the action pending before Judge Cavanaugh, Garcia challenges judicial handling of Garcia's apparently different criminal prosecution pending before a judge at the Municipal Court of North Bergen Township, Hudson County, New Jersey; (3) in the instant action, the complaint states a multitude of challenges related to confinement of inmates at the Facility, that is Hudson County Correctional Center; and (4) in the action pending before Judge Wigenton, the petition asserts that Garcia was provided with ineffective assistance of counsel when Garcia pled guilty to shoplifting charges filed against him with the Superior Court of New Jersey, Law Division, Hudson County, on the basis of the offense Garcia committed in Jersey City, Hudson county, New Jersey

(i.e., an offense different from his criminal prosecutions in municipal courts). Consequently, it appears that Garcia is currently confined pursuant to the shoplifting sentence imposed as a result of his plea agreement, while facing two different criminal charges, one in North Bergen Township and another in the Union City. The instant matter appears to be related to Garcia's incarceration ensuing from the sentence imposed for the shoplifting offense.

Garcia duly submitted his application to prosecute this matter in forma pauperis. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the instant Complaint.

## I.   STANDARD OF REVIEW

### A.   PLEADING REQUIREMENT

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906

(3d Cir. 1997). While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See id.

The Court of Appeals for the Third Circuit recently provided a detailed and highly instructive guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard. See Phillips v. County of Allegheny, 515 F.3d 224, 231-34 (3d Cir. 2008). The Court of Appeals guided as follows:

> [There are] two new concepts in Twombly [127 S. Ct. 1955 (2007)]. First, . . . "[w]hile a complaint . . . does not need detailed factual allegations, a plaintiff's [Rule 8] obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' requires [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 127 S. Ct. at 1964-65 . . . Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Id. at 1965 n.3. . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 1966. [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n.3. Second, the Supreme Court disavowed certain language that it had used many times before -- the "no set of facts" language from Conley. See id. at 1968. . . .
> [T]he Twombly decision focuses our attention on the "context" of the required short, plain statement. Context matters in notice pleading. . . . [Thus,] taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S. Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where . . . the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8. See Airborne Beepers & Video, Inc., v. AT&T Mobility L.L.C., 499 F.3d 663, 667 (7th Cir. 2007). . . . After Twombly, it is no longer sufficient to allege mere elements of a cause of

4

action; instead "a complaint must allege facts suggestive of the proscribed conduct." <u>Id.</u> . . . .

The more difficult question raised by <u>Twombly</u> is whether the Supreme Court imposed a new "plausibility" requirement at the pleading stage that materially alters the notice pleading regime. . . . The Court explained that a plaintiff must "nudge [his or her] claims across the line from conceivable to plausible" . . . . 127 S. Ct. at 1974. . . . "Plausibility" is related to the requirement of a Rule 8 "showing." [Thus, while a court cannot] dismiss[] . . . a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 1965. [T]he pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. <u>Id.</u> This "does not impose a probability requirement at the pleading stage[]" but . . . "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. <u>Id.</u>

<u>Phillips</u>, 515 F.3d at 231-34 (original brackets removed).

## B.   AMENDING A PLEADING

Ordinarily, the plaintiff may be granted "leave [to amend] when justice so requires." <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406, 1413 (3d Cir. 1993). Indeed, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep . . . may be decisive to the outcome and accept  the principle that the purpose of pleading is to facilitate a proper decision on the merits." <u>Foman</u>, 371 U.S. at 181-82.  However, while "Rule 15(a) gives the court extensive discretion to decide whether to grant leave to amend after the time for amendment as of course has passed," Alan Wright et al., <u>Federal Practice and Procedure:</u> Civil 2d § 1486 (2d ed. 1990), the Rule

15(a) "generous standard is tempered by the necessary power of a district court to manage a case" in light of the factors listed in Foman. See Shivangi v. Dean Witter Reynolds, Inc., 825 F.2d 885, 891 (5th Cir. 1987).   The Supreme Court has identified several factors to be considered when applying Rule 15(a):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.   In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given."

Foman, 371 U.S. at 182 (emphasis supplied); see also Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc., 663 F.2d 419, 425 (3d Cir. 1981), cert. denied, 455 U.S. 1018 (1982).

It follows that the courts need not entertain futile amendments to the pleadings, e.g., amendments that aim to assert claims subject to sua sponte dismissal or to an affirmative defense incorporated either in the proposed claim or in the claims already submitted.  See, e.g., Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001)("[A claim] may be subject to dismissal . . . when an affirmative defense . . . appears on its face") (quoting ALA, Inc. v. CCAir, Inc., 29 F.3d 855, 859 (3d Cir. 1994)).

## II.  GARCIA'S ALLEGATIONS

### A.  Class Action

Garcia's submission is a forty-page application, with first eight pages being the actual civil complaint ("Complaint"). See Docket Entry No. 1, at 1-8. The first page of the Complaint contains the caption designating the following plaintiffs: "Edward Garcia & i[n]m[ates] of B500 of [the Facility]"; and the eighth page of the Complaint bears the signature of Garcia, as well as forty-one names (or signatures) of other inmates apparently confined at the Facility and housed in the same unit as Garcia.[1] See id. at 1, 8. Moreover, all allegations stated in the Complaint and attached documents are made on behalf of unspecified plurality, that is, with the usage of such pronouns as "we" and "us," as well as the possessive adjectives "our." Consequently, the Complaint indicates an attempt to initiate a class action matter. On the other hand, the Complaint is accompanied only by Garcia's application to proceed in forma pauperis, which suggests an individual action on behalf of Garcia alone.

---

[1]  Many of these names or signatures are not readable. See Docket Entry No. 1, at 8. This Court attempted to correctly decipher the names and/or identification numbers of the inmates who co-signed Garcia's Complaint.

### 1.   Certification of the Class Is Not Warranted

Recognizing the aforesaid implied class action aspect, this Court finds it proper to first address the issue as to whether a certification is warranted at the instant juncture.

### a.   RULE 23 CONSIDERATIONS

A party seeking class certification bears the burden of proving that the proposed class action satisfies the requirements of Federal Rule of Civil Procedure 23. See Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 183-84 (3d Cir. 2001). To meet this burden, plaintiffs must satisfy the four prerequisites of Rule 23(a) and show that the action can be maintained under at least one of the subsections of Rule 23(b). See id.; see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-14 (1997). The Court of Appeals for the Third Circuit has recognized the utility, and often the necessity, of looking beyond the pleadings at the class certification state of litigation. See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 168-69 (3d Cir. 2001) ("In reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action"). Despite that review, "it is not necessary for the plaintiffs to establish the merits of their case at the class certification stage" and "the substantive allegations of the complaint must be

8

taken as true." <u>Chiang v. Veneman</u>, 385 F.3d 256, 262 (3d Cir. 2004).

To be certified as a class, plaintiffs must satisfy Federal Rule of Civil Procedure 23(a). Rule 23(a) provides as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Commonly referred to as numerosity, commonality, typicality, and adequate representation, these four requirements are "meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances." <u>Baby Neal v. Casey</u>, 43 F.3d 48, 55 (3d Cir. 1994).

Both size of class and complexity of litigation should be limited to encourage manageability of class suits. Rule 23(c)(4) permits division of any action into subclasses so as to increase manageability. <u>See</u> <u>Dore v. Kleppe</u>, 522 F.2d 1369, 1375, <u>reh'g denied</u>, 526 F.2d 697 (5th Cir. 1975). Rule 23(c)(4) provides that, if "a class [is] divided into subclasses[,] . . . each subclass [is] treated as a class." Therefore, "[a]ny subclass formed must itself meet all requirements of class action," <u>Avery v. Heckler</u>, 584 F. Supp. 312, 323 (D. Mass. 1984), and even if

subclassification is appropriate, subclasses cannot be certified unless the party seeking certification can demonstrate that requirements of FRCP 23 are established, <u>Pickett v. IBP, Inc.</u>, 197 F.R.D. 510, 516 (M.D. Ala. 2000).

Numerosity is the first prerequisite listed in Rule 23(a). Numerosity requires a finding that the putative class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No single magic number exists satisfying the numerosity requirement." <u>Moskowitz v. Lopp</u>, 128 F.R.D. 624, 628 (E.D. Pa. 1989). The Court of Appeals, however, generally has approved classes of forty or more. <u>See Stewart v. Abraham</u>, 275 F.3d 220, 226-27 (3d Cir. 2001). In the case at bar, the putative class of Garcia and 41 signatories appears to satisfy the numerosity requirement; therefore, the Court finds that the numerosity requirement is duly met with respect to Garcia's Complaint. <u>See id.</u>

The next Rule 23(a) prerequisite is commonality. To satisfy the commonality requirement, Plaintiffs must show the existence of at least one question of law or fact common to the class. <u>See Johnston v. HBO Film Mgmt.</u>, 265 F.3d 178, 184 (3d Cir. 2001). "Commonality does not require an identity of claims or facts among class members; instead, the commonality requirement will be satisfied if the named plaintiffs share at least one common question of fact or law with the grievances of the prospective

10

class." Id.  All that is required is that the litigation involve some common questions and that plaintiffs allege harm under the same legal theory.  See Baby Neal, 43 F.3d at 58.  "Because the requirement may be satisfied by a single common issue, it is easily met . . . ." Id. at 56.  It is not necessary that all putative class members share identical claims.  See Hassine v. Jeffes, 846 F.2d 169, 176-177 (3d Cir. 1988).  "Even where individual facts and circumstances do become important to the resolution, class treatment is not precluded." Baby Neal, 43 F.3d at 57.  While the Complaint sets forth a gamut of claims, the allegations related to inmates' conditions of confinement might be common to all signatories and, thus, sufficient to satisfy the commonality requirement at this stage of the litigation.

Rule 23(a)(3) provides that the typicality requirement is satisfied if the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work for the benefit of the entire class through the pursuit of their own goals."  In re Prudential Ins. Company of America, 148 F.3d 283, 311 (3d Cir. 1998).

The typicality requirement may be met despite the existence of factual differences between the claims of the named plaintiffs and the claims of the proposed class.  See Eisenberg v. Gagnon, 766

F.2d 770, 786 (3d Cir. 1985).  If "the class representatives . . . present those common issues of law and fact that justify class treatment, thereby tending to assure that the absent class members will be adequately represented," then Rule 23(a)(3) is satisfied. Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 923 (3d Cir. 1992)  (quoting Eisenberg, 766 F.2d at 786).  "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the class of the class members, and if it is based upon the same legal theory."  Id. at 923.

In the case at bar, the typicality of claims and defenses does not appear to be present with respect to the putative class in view of uniqueness of the legal tests (and corresponding defenses) applicable to the claims raised, i.e., denial of medical care, denial of access to courts, denial of minimally suitable conditions of confinement, failure to release inmates upon expiration of their prison terms, failure to extradite inmates to other jurisdictions, etc. See Helling v. McKinney, 509 U.S. 25, 31 (1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).  Therefore, this Court finds that this prerequisite is not satisfied by the signatories' application.  See Beck v. Maximus, Inc., 457 F.3d 291, 300 (3d Cir 2006) (noting that "class certification [is defeated upon showing of] some degree of likelihood [that] a unique defense will play a significant role at trial").

12

Moreover, in addition to satisfying Rule 23(a), plaintiffs must also show that the putative class or subclass falls under at least one of the three subsections of Rule 23(b). Since Plaintiffs' putative class seeks money damages, the class must satisfy the requirements of Rule 23(b)(3) regarding the issues of predominance and superiority.[2] See Grider v. Keystone Health Plan Cent., Inc., No. 01-564, 2006 WL 3825178, at *14 (E.D. Pa. Dec. 20, 2006). This requirement reads as follows:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition[,] the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

The Rule 23(b)(3) requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive to warrant certification." Newton, 259 F.3d at 187. The predominance requirement of Rule 23(b) is more rigorous than the commonality requirement of Rule 23(a). See McMahon Books, Inc. v. Willow Grove Assocs., 108 F.R.D. 32, 35 (E.D. Pa. 1985). The Supreme Court has held that, while "[p]redominance is a test readily met in certain

---

[2] Class action is less favored where plaintiffs seek monetary damages, because any award of damages requires a case-by-case examination of each class members' claims--a process best suited to individual adjudications rather than class action lawsuits. See Contawe v. Crescent Heights of Am., Inc., 2004 WL 2966931 (E.D. Pa. Dec. 21, 2004).

cases alleging consumer or securities fraud[, certification of a class should be made with] caution where individual stakes are high and disparities among class members great." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997). In addition, the requirement that a class action be the superior method of resolving the claims ensures that there is no other available method of handling it which has greater practical advantages. See Fed. R. Civ. P. 23 advisory committee's note; Johnston, 265 F.3d at 194 ("A class action must represent the best available method for the fair and efficient adjudication of the controversy"). "Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large, and (6) of the defendant. . . . Superiority must also be looked at from the point of view of the issues." Katz v. Carte Blanche Corp., 496 F.2d 747, 760 (3d Cir. 1974).

In the instant case, this Court finds that neither the requirement of predominance nor that of superiority could be met with respect to the putative class in view of qualitative and quantitative differences in potential claims and corresponding potential defenses, and also in view of the uniqueness of certain injuries allegedly suffered by some signatories, e.g., injuries to health as a result of failure to provide due medical care.

14

Therefore, certification of the signatories' putative class appears to be unwarranted in view of the failure to meet the typicality, predominance and superiority requirements of Rule 23.

b.   GENERAL CONSIDERATIONS

In addition to considerations expressly set forth in Rule 23, there are general considerations cautioning against class certification of inmates.  It is well known that group applications are rife with potential problems.  See, e.g., Lindell v. Litscher, 212 F. Supp. 2d 936 (W.D. Wis. 2004).

> The court has only limited ability to monitor the prosecution of the complaint to insure, for example, that each plaintiff receives a copy of each document or pleading submitted to the court and approves the submission or that each plaintiff is capable of understanding the submissions made on his behalf.  In this case, it is extremely unlikely that each [plaintiff] has seen a copy of the group complaint, considering its length and the expense that photocopying it would have involved.  This makes it impossible to know whether each plaintiff even knows what is being advanced on his behalf.  In these circumstances, there is no way to protect the interests of each plaintiff. . . . It is rare, however, that all of the claims in any complaint are common to every one of the named [plaintiffs].  The complaint in this case is an example of such a pleading. Petitioners allege several claims concerning the physical conditions at the . . . Facility that are common to each of them, but only [one] petitioner . . . alleges that he was deprived of his [equal protection rights].  Requiring separate complaints encourages each [plaintiff] to limit his complaint to the claims that are specific to him. The effect is conservation of judicial resources.

Boriboune v. Berge, No. 04-15, 2004 WL 502033, at *2-3 (W.D. Wis. Mar. 8, 2004), remanded on other grounds, Boriboune v. Berge, 60 Fed. R. Serv. 3d 417 (7th Cir. Wis. 2004) (finding that there was

15

no irreconcilable conflict between Rule 20 and 28 U.S.C. § 1915 of the PLRA); see also Wasko v. Allen County Jail, No. 06-85, 2006 WL 978956 (N.D. Ind. April 12, 2006) (finding impracticalities inherent to multi-prisoner litigation); Swenson v. MacDonald, No. 05-93, 2006 WL 240233 (D. Mont. Jan. 30, 2006) (same); Thomas E. Willging, Laural L. Hooper, Robert J. Niemic, An Empirical Analysis of Rule 23 to Address the Rulemaking Challenges, 71 N.Y.U. L. Rev. 74, 96 (May 1996) (assessing "the average amount of time required for the average class actions" and concluding that "class actions required [for a resolution of] prisoner civil rights cases" filed as a class action is 5.03 times more than the time required for resolution of all claims of individual members of the class).

Next, the Court should certify a class of inmates with caution, being mindful of the fact that it is all too easy for one inmate to persuade others to join a complaint, whether or not it is in the best interests of the others to do so. See Swenson, 2006 WL 240233, at *4.

In addition to these basic reasons, there are other considerations cautioning against certification of a putative class of inmates. For instance, none of these inmates could act as a "lead plaintiff" since it was long established that "a prisoner proceeding pro se may not seek relief on behalf of his fellow inmates." See Alexander v. New Jersey State Parole Board, 160 Fed. Appx. 249, 249 n.1 (3d Cir. 2005) (citing Oxendine v. Williams, 509

F.2d 1405, 1407 (4th Cir. 1975)).  The rationale for this prohibition is derivative from the language of Rule 23(a)(4) which requires that the class representative have the capacity to fairly and adequately protect interests of class members, and an inmate, a lay person subject to being transferred to another corrections facility at any time, cannot, by definition, adequately and fairly represent other incarcerated individuals.  See Awala v. N.J. Dep't of Corr., No. 05-2362, 2005 WL 2044910(D.N.J. Aug. 23, 2005), appeal dismissed, 227 Fed. Appx. 133 (3d Cir. Jan. 31, 2007); see also Laird v. Tatum, 408 U.S. 1 (1972).

Moreover, jail populations are notably transitory, see Wasko, 2006 WL 978956; Swenson, 2006 WL 240233, and inmates are likely to be released from confinement.  Indeed, Garcia himself is scheduled to be released in November of this year.  See Civil Action No. 08-1761 (SDW), Docket Entry No. 1.  In view of the above-discussed reasons, none of the signatories, Garcia included, qualifies as a "lead" plaintiff under Rule 23.

Finally, two important considerations caution against certification of the putative class at hand.  The first, and the most obvious one, ensues from the affirmative defense of exhaustion of administrative remedies, see Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002), which, within parameters of a state correctional facility located in the State of New Jersey, usually means a factual determination resolvable through the mode of motion for

summary judgement filed by Defendants with respect to each and every individual plaintiff. Therefore, any certification of the putative class prior to establishing claims surviving Defendants' summary judgement challenges is, by definition, premature. <u>See</u> Fed. R. Civ. P. 23(c)(1)(A) ("When a person sues or is sued as a representative of a class, the court must--at an early <u>practicable time</u>--determine by order whether to certify the action as a class action") (emphasis supplied).

The second concern arises from the fact that the Prisoner Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996), imposes severe consequences on prisoners who file frivolous suits. In 1996, when Congress enacted the PLRA, Congress's purpose was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." <u>Santana v. United States</u>, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants. Moreover, the PRLA, in an effort to halt the filing of meritless inmate litigation, enacted what is

commonly referred to as the "three strikes" provision. Codified at 28 U.S.C. § 1915(g), the "three strikes" rule provides that an inmate who has had three prior actions or appeals dismissed as frivolous, malicious, or for failing to state a viable claim may not proceed in a civil action in forma pauperis "unless the prisoner is in imminent danger of serious physical injury."[3]  See 28 U.S.C. § 1915(g); Abdul-Akbar v. McKelvie, 239 F.3d 307, 312 (3d Cir. 2001) (en banc).

Since prisoners whose names are added to group complaints may find that they have lost their right to file lawsuits without prepayment of the entire filing fee, even though they are unaware of much if not all of the claims of the complaints they have joined, it is an obligation of this Court to postpone certification of a class until the point when the Court can fully satisfy itself in knowing that (1) each plaintiff actually wishes to file an action rather than being peer-pressured or bullied into the suit by more influential inmates, or by an inmate committee exercising certain powers, and (2) each plaintiff had a fair opportunity to articulate to the Court the wrongs that the plaintiff, on his or

---

[3]  The "imminent danger" exception to § 1915(g)'s "three strikes" rule is construed narrowly and available only "for genuine emergencies," where "time is pressing" and "a threat ... is real and proximate." Lewis vs. Sullivan, 279 F.3d 526, 531 (7th Cir.2002).  Moreover, "[i]mminent danger" is assessed not at the time of the alleged incident, but rather at the time the complaint is filed. See Abdul-Akbar, 239 F.3d at 312.  Therefore, very few complaints meet the "imminent danger" exception.

her own, believes (s)he actually suffered.  That way, the Court can ensure that no inmate would eventually regret taking part in the instant action.  <u>See</u> Fed. R. Civ. P. 23(c)(1)(A) ("When a person sues or is sued as a representative of a class, the court must--at an early <u>practicable time</u>--determine by order whether to certify the action as a class action") (emphasis supplied).

Indeed, the fact that no other inmate but Garcia submitted his application to proceed <u>in forma pauperis</u> suggests that all other signatories of the Complaint did not have a chance to think about potential legal consequences of their decision to affix their signatures.  In view of the foregoing, the Court finds that Rule 23 considerations, as well as general considerations, weigh heavily against class certification and denies it without prejudice.

### 2.   Garcia Cannot Raise Claims on Behalf of Signatories

Under the "next friend" doctrine, standing is allowed to a third person so this third person could file and pursue a claim in court on behalf of someone who is unable to do so on his or her own.  The doctrine dates back to the English Habeas Corpus Act of 1679 and provides a narrow exception to the "case or controversy" requirement set forth in the Article III of Constitution.  <u>See</u> <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 154-55 (1990).

The <u>Whitmore</u> Court set out two requirements that should be met by the one seeking to qualify for "next friend" standing: (1) "the 'next friend' must be truly dedicated to the best interests of the

person on whose behalf [(s)he] seeks to litigate" (and it has been further suggested that a "'next friend' must have some significant relationship with the real party in interest"; and (2) "the 'next friend' must provide an adequate explanation--such as inaccessibility, mental incompetence, or other disability--why the real party in interest cannot appear on his own behalf to prosecute the action." Id. at 163-64. The burden is on the "next friend" to justify his/her status and, thereby, to obtain the jurisdiction of the federal courts. See id. at 164.

In view of these requirements, this Court cannot recognize Garcia as "next friends" of the signatories of his Complaint, since this Court cannot satisfy even the first prong of the Whitmore test (having no information as to Garcia's relationship to these signatories and/or whether Garcia is "truly dedicated to the best interests" of these inmates). Moreover, the Court has no evidence verifying mental incompetence of these signatories and their inability to vindicate their legal rights without Garcia's assistance and thus, finds that the second prong of the Whitmore test is also unsatisfied. Consequently, this Court will examine the Complaint as Garcia's personal submission while being mindful of all ambiguities inherent to Garcia's use of plural pronouns and corresponding possessive adjectives.[4]

---

[4]

In order to ensure that signatories of Garcia's Complaint are enabled to submit their own § 1983 applications, this Court will
(continued...)

### B.    Substantive Allegations

The allegations set forth in the Complaint could be roughly subdivided into eight groups:

(1)    allegations asserting failure to release inmates after expiration of their prison terms;

(2)    allegations asserting failure to enter detainers lodged against inmates in the affected inmate's prison records;

(3)    allegations asserting denial of proper social workers;

(4)    allegations asserting illegal profiteering by the Facility officials as a result of their pocketing of state funds;

(5)    allegations asserting the Facility's failure to serve meals recommended by the National Dietician Association;

(6)    allegations asserting denial of access to courts;

(7)    allegations asserting unconstitutional conditions of confinement; and

(8)    allegations asserting denial of medical care.

Docket Entry No. 1, at 13-16.

---

[4](...continued)
direct the Clerk to furnish the inmates (whose names this Court was able to determine from the signature page) with a blank civil rights complaint form and application to proceed in forma pauperis. The Court, however, will not direct the Clerk to open individual matters for these signatories since, at the instant juncture, it would be unduly presumptive for the Court to find that each of these signatories would necessarily wish to initial a legal action.

## 1.    Allegations Not Amenable to Curative Re-Pleading

The bulk of the above-listed allegations fail to state a claim, either as a matter of law or for the purposes of Garcia's particular circumstances.

Specifically, Garcia's allegations asserting failure to release inmates after expiration of their prison terms appears to be inapplicable to Garcia's circumstances (since his prison term is not to expire until November of this year, see Civil Action No. 08-1761 (SDW), Docket Entry No. 1), and, even if this Court is to hypothesize that Garcia is actually being held at the Facility beyond the term of his sentence and seeks immediate release, his allegations are subject to dismissal without prejudice for lack of jurisdiction.[5]

Garcia's allegations as to failure to lodge detainers against him are similarly barred by facts asserted in Garcia's actions pending in front of Judges Martini and Cavanaugh (where Garcia expressly states that his two criminal prosecutions in the City of Union City and North Bergen Townships are currently underway and

---

[5]

In <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 489 (1973), the Supreme Court announced an exception to the broad language of § 1983 and held that a prisoner must bring a suit for equitable relief that, effectively, challenges "the fact or duration of confinement" only through the mode of a habeas corpus petition. <u>See id.</u> at 500. Hence, if this Court is to hypothesize that Garcia is actually being held at the Facility beyond the term of his sentence and seeks immediate release, this Court has no jurisdiction to entertain such claim in a § 1983 action.

yielded no sentences that might give rise to a detainer).[6]   See
Civil Actions Nos. 08-1648 (WJM) and 08-1990 (DMC).

Garcia's allegations asserting that the social worker provided
by the Facility is not a "roll [sic.] model" that Garcia desires to
see fail to state a claim upon which relief may be granted, since
the Constitution does not guarantee inmates' right to have a role
model.[7]  Garcia's allegations asserting illegal profiteering by the
Facility officials from the state funds fare no better, since

---

[6]

Moreover, a failure to lodge a detainer, without any adverse
action executed by an entity operating under color of law and
expressly based on such failure to lodge a detainer, does not
amount to a cognizable injury.  See Fain v. Morgan, No. 06-4404,
2008 WL 1733103, at *6 (D.N.J. Apr. 10, 2008) (discussing the issue
of correction of prison records).   Finally, Garcia's related
allegations asserting failure to extradite suffer of identical
shortcoming.   The Interstate Agreement on Detainers ("IADA"), 18
U.S.C. app. 2 § 2, was adopted by the State of New Jersey.  See
N.J. Stat. Ann. § 2A:159A-1 et seq.  The purpose of the IADA is "to
encourage the expeditious and orderly disposition of [outstanding
criminal] charges . . . ."  18 U.S.C. app. 2 § 2, art. I.   To
achieve this end, the IADA establishes procedures by which a
prisoner against whom a detainer has been lodged may be transferred
to the temporary custody of the receiving state.  Garcia's pending
criminal charges cannot implicate the IADA, since all Garcia's past
and pending charges are entertained within the State of New Jersey.

[7]

The Eighth Amendment's proscription against cruel and unusual
punishment is violated when prison officials fail to protect the
health and safety of prison inmates.  To state a failure to protect
claim, a plaintiff must assert facts suggesting that he is
incarcerated under conditions posing a substantial risk of serious
harm to the prisoner's health or life and that prison officials act
with deliberate indifference to that risk of harm.  See Farmer v.
Brennan, 511 U.S. 825, 837 (1994); Beers-Capitol v. Whetzel, 256
F.3d 120, 133 (3d Cir. 2001).   Here, Garcia's feelings that the
social worker is not a proper role model do not suggest either a
risk of harm or any deliberate indifference on the part of the
Facility officials.

Garcia lacks standing to assert such claims. See Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991 (2006) (persons negatively affected by activities of officials or commercial entities engaged in illegal profiteering from state funds do not have standing to litigate the claim on behalf of the State).

Finally, Garcia's allegations asserting the Facility's failure to serve meals recommended by the "National Dietician Association" fail to state a claim upon which relief may be granted.[8] According to Garcia, the Facility violates the inmates' rights by serving breakfast meals consisting of skim milk and scrambled eggs made from egg powder (instead of a tray consisting of juice, full-fat milk, coffee and fresh eggs)[9] and lunch/dinner meals consisting of turkey and coleslaw (instead of tuna and salad made of fresh

---

[8]    This Court is not aware of such entity as the "National Dietician Association." The Court is aware of two entities that have similar names, i.e., are New Jersey Dietetic Association and American Dietetic Association Foundation, but neither one of these entities recommended the type of meals demanded by Garcia. See <<http://www.eatrightnj.org/website/index.php>> and <<http://www.adaf.org/cps/rde/xchg/adaf/hs.xsl/adaf.html>>.

[9]    Garcia appears to allege that the meals served at the Facility provide the amount of saturated fat and carbohydrate below the one desired by Garcia. However, Garcia does not allege that he is prevented from supplementing his diet with additional carbohydrates and saturated fat through simple consumption of bread and butter. Moreover, Garcia's demand for service of coffee appears to contradict his argument based on nutrition and caloric value, since a serving of coffee contains zero calories and the same amount of nutrients. See <<http://www.food-stats.com/Beverages/Coffee_instant_decaffeinated_powder.html>>.

lettuce, tomatoes and carrots).[10]   However, the Eighth Amendment does not entitle inmates to tuna over turkey, or to a salad of their choice, or to fresh produce;[11] all that the Eighth Amendment

_____

[10]

Garcia's allegations, if based on calorie and nutritional value argument, are factually wrong.  A serving of coleslaw has 138 calories, 5 grams of fat, 2 grams of protein, 23 grams of carbohydrate and 3 grams of dietary fiber, while a serving of lettuce and tomato salad yields 57 calories, 3 grams of fat, 2 grams of protein, 7 grams of carbohydrate and 2 grams of dietary fiber.  See <<http://www.lowfatlifestyle.com/salads/saladrecipes/lettuceandtomatosalad.htm>> and <<http://www.lowfatlifestyle.com/salads/saladrecipes/texasslaw.htm>>.  Finally, the dietary value of tuna is highly debatable due to high mercury level in tuna meat.  See <<http://www.msnbc.msn.com/id/19441470/wid/11915773?GT1=10212>>

[11]

Where Plaintiff alleged that,

[the persons] who run[] the kitchen food service and menus deliberately create[] the following hazards[] They never serve peanuts nor peanut butter; they never serve spinach; they never serve broccoli, as they only serve broccoli stems; the bananas they serve are only half the size of a normal, regular size banana and are too often not ripe (being too green rather than yellow).  They often serve their "farm-grown" crab apples which cause dehydration, because of diarrhea.  When they serve orange juice it is only four ounce container size, rather than eight ounces; they never serve raisins, nor any grapes, nor plums nor prunes.  The . . . kitchen does not serve a full bowl of dry cereal (such as cheerios or cornflakes) and when [an inmate] filed the lack of proper ounces being served, they discontinued using bowls they were using.  The above denied proper nor adequate nutrition, minerals, nor vitamins, etc., and endangers good health, and lowers or eliminates the immunity to diseases, this is a willful endangerment and violates the Eighth Amendment,

the court explained that

[t]he Eighth Amendment protects prisoners from being deprived of food.  See Clark-Murphy v. Foreback, 439 F.3d 280, 292 (6th
(continued...)

ensures against are the acts that could be qualified as "'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer v. Brennan, 511 U.S. 825, 835 (1994) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Here, Garcia did not allege that he suffered serious medical consequences as a result of the diet provided by the Facility. Therefore, his claim with respect to the menu selection is without merit. See Briggs v. Heidlebaugh, No. 96-3884, 1997 WL 318081, at *3 (E.D. Pa. May 20, 1997) ("An unappetizing diet . . . does not support a constitutional claim").

Consequently, Garcia's allegations based on failure to release inmates after expiration of their prison terms, failure to enter detainers into the prison records, lack of role-model-like social workers, illegal profiteering from the state funds and failure to serve meals recommended by the "National Dietician Association" will be dismissed.

---

[11](...continued)
Cir. 2006) (inmate "had a clearly established right not to be deprived of food and water"). "Depriving an inmate of food or serving him contaminated food states a claim for a violation of the Eighth Amendment." Thompson v. Mich. Dep't of Corr., 2000 U.S. App. LEXIS 27046, at *2 (6th Cir. Oct. 20, 2000). However, while Plaintiff may wish the prison menu had more variety, prison food is not required to be tasty or widely varied. See Cunningham v. Jones, 567 F.2d 653, 659-60 (6th Cir. 1977).

Shaw v. Worley, No. 07CV-P35, 2007 WL 2461710, at *3 (W.D. Ky. Aug. 23, 2007).

2.    Allegations That Might Be Cured by Re-Pleading

The Court's foregoing analysis left unaddressed three groups of Garcia's claims: (1) denial of access to courts; (2) unconstitutional conditions of confinement; and (3) denial of medical care.

a.    ACCESS TO THE COURTS CLAIM

Courts have recognized different constitutional sources for the right of access to the courts. Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[12] The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement. Bounds v. Smith, 430 U.S. 817, 822 (1977).  In other words, prison officials must "give prisoners a reasonably adequate opportunity to

---

[12]
The right of access to the courts is an aspect of the First Amendment right to petition. See McDonald v. Smith, 472 U.S. 479, 482 (1985); Milhouse v. Carlson, 652 F.2d 371, 374 (3d Cir. 1981). The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989); see also, Hudson v. Palmer, 468 U.S. 517, 523 (1984) ("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"). The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

present claimed violations of fundamental constitutional rights to the Courts." Id. at 825. " '[T]he touchstone . . . is meaningful access to the courts.' " Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988) (quoting Bounds, 430 U.S. at 823)(internal quotation omitted).

In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."[13] 430 U.S. at 829. The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis removed).

---

[13]

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. . . . This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." Bounds v. Smith, 430 U.S. 817, 824-25 (1977).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense. See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

Here, Garcia's allegations are void of any facts suggesting past or imminent "actual injury" caused by the limited access he had to the law library. However, it is not unfathomable that he might be able to cure these deficiencies if allowed to amend his Complaint. Therefore, the Court will dismiss Garcia's assess to the courts claim without prejudice and allow him to file a curative pleading. See Foman, 371 U.S. at 182.

b.   CONDITIONS OF CONFINEMENT CLAIM

The Eighth Amendment prohibits infliction of cruel and unusual punishment, thus mandating prison officials to provide humane conditions of confinement. The Constitution, however, "does not mandate comfortable prisons." Rhodes, 452 U.S. at 349. Prison

officials must merely ensure that inmates receive adequate food, clothing, shelter and medical care, plus must take reasonable measures to guarantee the safety of the inmates. See Farmer v. Brennan, 511 U.S. at 832 (quoting Hudson v. Palmer, 468 U.S. at 526-27). To state a claim under the Eighth Amendment, an inmate must allege both objective and subjective components. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation," Id. at 298(quoting Rhodes, 452 U.S. at 347), hence requiring that the deprivation sustained by a prisoner be "extreme deprivations," Hudson v. McMillian, 503 U.S. 1, 9 (1992). The subjective component requires that the state actor have acted with "deliberate indifference," that is, with a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer, 511 U.S. at 835; Wilson, 501 U.S. at 303. In sum, an inmate may satisfy (1) the objective component by showing that he was deprived of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care and personal safety, Rhodes, 452 U.S. at 347-48, 364 (3d Cir. 1992), and (2) the subjective component by demonstrating that prison officials knew of such substandard conditions or treatment and "acted or failed to act with deliberate indifference to a substantial risk of harm to

inmate health or safety," <u>Ingalls v. Florio</u>, 968 F. Supp. 193, 199 (D.N.J. 1997).

Here, in addition to his non-viable claim based on lack of coffee and fresh eggs for breakfast and tuna-rather-than-turkey for dinner, Garcia asserts other facts implicating the conditions of confinement at the Facility. Specifically, he states that the unit where he is housed has only one working shower, and certain inmates in his unit are so deprived of personal hygiene that fungus and ringworms grow on their bodies.[14]   <u>See</u> Docket Entry No. 1, at 15. While these allegations are, indeed, not personal to Garcia, and this Court has no way of establishing from the statements made in the Complaint whether Garcia himself suffered from any such lack of personal hygiene, the Court certainly cannot rule out the possibility that Garcia might be able to state an individualized claim to that effect.   <u>See</u> <u>Foman</u>, 371 U.S. at 182.   Therefore, this

---

[14]

In addition, Garcia asserts his displeasure with the fact that tables have rust spots and the inmates are not availed to spray-on disinfectants, bleaches or similar antibacterial sprays to ensure against bacteria presence on the surfaces of amenities situated in the Facility.   <u>See</u> Docket Entry No. 1, at 15.   However, lack of perfect disinfection does not amount to unconstitutional conditions of confinement.   <u>See</u> <u>Miller v. Brown</u>, No. 07-2020, 2007 WL 1876506, at *4 (D.N.J. June 26, 2007) ("While any person's desire for spotless cleaning, perfect washing facilities and weekly laundry service is understandable, lack of such niceties cannot amount to a violation of constitutional magnitude. . . . [E]ven a complete denial of showers does not rise to the level of an Eighth Amendment violation. Similarly, unclean cells and limitation of laundry service cannot amount to an Eighth Amendment violation, unless the plaintiff suffered an actual serious physical injury as a result of unsanitary conditions"); <u>Moultrie v. Oxley</u>, No. 07-1195, 2007 WL 1395435, at *8 (D.N.J. May 10, 2007).

Court will dismiss Garcia's conditions of confinement claim based on lack of personal hygiene without prejudice and allow him to file a curative pleading stating facts related to his own well-being. See Twombly, 127 S. Ct. at 1965 & n.3 ("factual allegations must be enough to raise a right to relief above the speculative level").

c.   MEDICAL CARE CLAIM

This proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.   See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. See id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious.   "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. at 9 (1992).   Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.

See <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987), <u>cert. denied</u>, 486 U.S. 1006 (1988).

The second element of the <u>Estelle</u> test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. See <u>Farmer v. Brennan</u>, 511 U.S. at 837-38. "Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference." <u>Andrews v. Camden County</u>, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and

not an Eighth Amendment violation.   See Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

   "Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] intentional refusal to provide that care,' the deliberate indifference standard has been met. . . . Finally, deliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." Lanzaro, 834 F.2d at 346 (citations omitted).  "Short of absolute denial, 'if necessary medical treatment [i]s . . . delayed for non-medical reasons, a case of deliberate indifference has been made out." Id. (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'"   Id. at 347 (citation omitted).

   Here, Garcia merely alleges that some unspecified inmates were denied some unspecified medical treatment, and that the medical staff at the Facility refuses to issue prescriptions for anything other than three-day- treatment by over-counter pain killers or

three-day treatment with cough syrups. <u>See</u> Docket Entry No. 1, at 15-16. These allegations, however, do not suggest that Garcia suffered of a serious medical need and was denied treatment. All that Garcia's Complaint alleges is his disappointment with limited pharmaceutical stock at the Facility. Consequently, his allegations fail to state a cognizable claim and will be dismissed. However, since it is plausible that Garcia might have suffered a serious medical need, which the Facility's personnel treated with deliberate indifference, <u>see</u> <u>Foman</u>, 371 U.S. at 182, Garcia's medical claims will be dismissed without prejudice and he will be allowed to file a curative pleading stating the facts related to the treatment of his serious medical need, if any. <u>See</u> <u>Twombly</u>, 127 S. Ct. at 1965 & n.3 ("factual allegations must be enough to raise a right to relief above the speculative level").

III.   <u>CONCLUSION</u>

For the foregoing reasons, certification of the putative class consisting of Garcia and signatories of his Complaint will be denied as premature at the instant juncture.[15] All signatories of Garcia's Complaint will be served with an blank civil rights

---

[15]
In the event the signatories of Garcia's Complaint initiate their own actions, Garcia and the signatories may move this Curt for certification or for consolidation of their legal actions at a later point, provided that they will have good faith basis to believe that such application is warranted.

complaint form and an application to prosecute their claims <u>in</u> <u>forma</u> <u>pauperis</u>.

Garcia will be allowed to prosecute the instant matter <u>in</u> <u>forma</u> <u>pauperis</u>.

Garcia's claims based on failure to release inmates after expiration of their prison terms, failure to enter detainers into the Facility's records, denial of role-model-like social workers, illegal profiteering by the Facility officials from state funds, and failure to serve meals suiting Garcia's palate will be dismissed, and Garcia will not be allowed to file curative pleadings as to these claims.

However, Garcia's claims based on denial of access to courts, conditions of confinement and denial of medical care will be dismissed without prejudice, and Garcia will be allowed to file an amended complaint stating the facts (related to Garcia himself) underlying these three groups of claims.

An appropriate Order accompanies this Opinion.

Dated: April 30, 2008

JOSE L. LINARES
United States District Judge